UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Xtreme Plastics, LLC, | ) | CASE NO. 4:16CV2521 |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | |
| G&G Landscape and Hardscape, Inc., et al., | ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) | (Resolves Doc. 22) |

Pending before the Court is Defendants' motion to dismiss this matter for lack of personal jurisdiction or in the alternative transfer the matter. Doc. 22. The motion to dismiss is GRANTED. This matter is hereby DISMISSED.

## I. STATEMENT OF FACTS

Plaintiff Xtreme Plastics, LLC ("Xtreme") filed this action on October 14, 2016 in the Northern District of Ohio against CATCHY, Inc. ("Catchy") and G&G Landscape and Hardscape, Inc. ("G&G"). Plaintiff alleges that Defendants Catchy and G&G are engaged in patent infringement by producing and selling their "Catchy Can" refuse container.

Non-party Incredible Solutions, LLC ("Incredible") contacted Catchy under the auspices of contracting to sell the "Catchy Can" in Ohio. After almost three months of negotiations, Catchy and Incredible entered into a confidentiality agreement. However, Catchy and Incredible did not form any sales partnership proposal. Following the failed negotiations, Xtreme filed suit alleging that Catchy possesses minimum contacts with Ohio through the attempted transaction of business and expectations that Catchy's products will reach the Northern District of Ohio through the stream of commerce.

Defendants filed a motion to dismiss for lack of personal jurisdiction and an alternative motion to transfer venue. Defendants' motion claims a lack of sufficient contacts to establish personal jurisdiction and an inconvenient forum under 28 U.S.C. § 1404(a). Defendants have also moved for dismissal of Defendant G&G. Xtreme has opposed the motion and Defendants have replied.

The Court now resolves the motion.

## II. LEGAL STANDARD & ANALYSIS

Federal Circuit law applies for determining jurisdiction in patent law claims. *E.g. Avocent v. Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). The Plaintiff bears the burden of establishing jurisdiction. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988). "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether assertion of jurisdiction would violate due process." *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). The Court need not conduct a due process analysis as the matter can be determined solely through analyzing Ohio's long-arm statute.

The relevant portions of Ohio's long-arm statute that Plaintiff relies on for jurisdiction state that:

> A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state…

Ohio Rev. Code Ann. § 2307.382 (West).

Plaintiff offers only conclusory statements, when referring to Defendants in the plural form, that G&G engaged in sales in Ohio and committed tortious injury in Ohio. Plaintiff alleges no contacts between G&G and Ohio and offers no evidence of G&G transacting business in Ohio, contracting in Ohio, or acting to cause tortious injuries in Ohio.

Plaintiff makes no prima facie case that G&G falls under Ohio's long-arm statute.

### A. Catchy did not transact any business in Ohio

"Subsection (A) makes clear that for personal jurisdiction to exist under Ohio's long-arm statute, the cause of action must arise from the defendant's conduct in Ohio." *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, 2011 WL 711568, at *4 (N.D. Ohio Feb. 22, 2011).

> More recently, courts have identified two factors that help determine whether an out-of-state defendant "transacted business" within the meaning of the long-arm statute. *See, e.g., Paglioni & Assocs., Inc. v. WinnerComm, Inc.*, 2007 WL 852055 (S.D.Ohio Mar.16, 2007); *Shaker Constr. Group, LLC v. Schilling*, 2008 WL 4346777 (S.D.Ohio Sept.18, 2008).
>
> The first factor is whether the out-of-state defendant initiated the dealing. *Paglioni*, 2007 WL 852055 at *9. If it were the defendant who "reached out" to the forum state to create a business relationship, the defendant has transacted business within the forum state. *Id*. The question of who initiates the contact, however, is but one factor to be considered and the determination is not always dependent upon who initiates the contact. *Military Supply, Inc. v. Reynosa Const., Inc.*, 2000 WL 109783 at n. 3 (Ohio Ct.App. Jan. 26, 2000). With regard to "reaching out," as a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state. *Benjamin v. KPMG Barbados*, 2005 WL 995589 (Ohio Ct.App. Apr. 28, 2005).
>
> …
>
> The second factor is "whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state." *Paglioni*, 2007 WL 852055 at *9. If the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted business in Ohio. *Shaker Construction*, 2008 WL

> 4346777 at *3. However, merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute "transacting business." "Rather, there must additionally be some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state." *Id.* (citing *Kentucky Oaks Mall*, 559 N.E.2d at 480).

*Id.* at *4-5.

Herein, Incredible, a non-party Ohio corporation, initiated negotiations. These negotiations did not physically take place in Ohio. In *Hammil Mfg.*, which Plaintiff cites, the Court held that "…a corporate nonresident, for the purposes of personal jurisdiction, is 'transacting any business,' within the plain and common meaning of the phrase, where the nonresident corporation *initiates*, negotiates a contract, and through the course of dealing *becomes obligated to make payments* to an Ohio corporation." *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.*, 82 Ohio App. 3d 369, 374, 612 N.E.2d 472, 475 (1992) (emphasis added). By Plaintiff's own admission, Incredible initiated contact with Catchy and the negotiations fell apart before either Catchy or Incredible was obligated to make payments. Accordingly, Plaintiff has not shown that Catchy transacted any business in Ohio.

### B. Catchy did not contract to supply services or goods in Ohio

Plaintiff claims that, by signing the June 27, 2016 letter of intent, Defendants contracted to supply goods or services in Ohio. Defendants provided uncontroverted evidence that, while the June 27, 2016 letter of intent was signed, it included changes and edits provided by Gualberto Garcia, the owner of Catchy. "If the response instead imposes conditions or introduces a new and material term, then the response constitutes a counteroffer that the original offeror may accept or reject." *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 561 (6th Cir. 2016) (internal quotations omitted). The changes by Garcia included a change to how the profit was to be split, thereby introducing a new material term. As such, the signed letter of intent constituted a

counteroffer and not an acceptance. The counteroffer by Mr. Garcia was never accepted by Incredible.

Plaintiff has not shown that a contract was formed, so it cannot be said that Catchy contracted to supply services or goods in Ohio.

### C. Catchy did not cause tortious injury by act or omission in Ohio

"Patent infringement is a tort created by federal statute, and the injury from the tort occurs where the product is sold or offered to be sold." *Red Carpet Studios v. Midwest Trading Grp., Inc.*, No. 1:12CV501, 2014 WL 4908317, at *2 (S.D. Ohio Sept. 30, 2014). Making all inferences in favor of the Plaintiff, this Court can only find that it was *possible* for the Catchy Can to have made its way through the stream of commerce into Ohio, not that it was sold in Ohio. Plaintiff has not made a prima facie case of the Catchy Can being sold in Ohio.

Plaintiff argues that Catchy's website is evidence that Catchy advertises the Catchy Can for sale in Ohio. Plaintiff offers no evidence or explanation of how Catchy's website could be used to sell products in Ohio, as it contains no contact information and no way to interact with Catchy.

Plaintiff next argues that the potentially interactive nature of Instagram coupled with Catchy posting pictures of the Catchy Can result in Catchy offering its product to be sold in Ohio. If the Court were to allow this argument, any business with a social media page could be brought into court by a unilateral act of a social media follower and would require that companies vet each social media follower to ensure that their followers only reside in locations where they would be willing to go to court. Plaintiff fails to convince the Court that possessing two (2) Instagram followers in Ohio constitutes offering to sell a product in Ohio.

Plaintiff has not shown that Catchy caused tortious injury in Ohio.

## D. Catchy did not solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in this state

"Subsection (4) applies to defendants who act outside of Ohio to cause tortious injury inside the state. Long-arm jurisdiction over such defendants exists if they regularly do or solicit business in Ohio, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in this state." *Imperial Prod., Inc. v. Endura Prod., Inc.*, 109 F. Supp. 2d 809, 811–12 (S.D. Ohio 2000). Catchy did not regularly do or solicit business in Ohio. Catchy operates in California and only attempted to do business in Ohio based on Incredible's solicitation. "[T]he Ohio long-arm statute requires a "proximate cause" relationship between the defendant's act and the plaintiff's cause of action." *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. 2014). Signing a Confidentiality Agreement with a non-party company did not create even a "but-for" cause of the alleged patent infringement. The negotiations between Incredible and Catchy consisted of occasional communications over the course of less than three (3) months and cannot be considered "persistent" or "regular." Plaintiff points to no other course of conduct that took place in Ohio. Plaintiff also points to no revenue that Catchy derived from goods used or services rendered in Ohio. Plaintiff, therefore, has not shown that Defendants solicited business, engaged in a persistent course of conduct, nor derived any revenue from Ohio.

### III. CONCLUSION

Defendants' motion to dismiss is GRANTED. This Court finds that it has no personal jurisdiction over G&G Landscape and Hardscape nor CATCHY, Inc. The complaint is hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Date: August 16, 2017  /s/ John R. Adams
Judge John R. Adams
UNITED STATES DISTRICT COURT